UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| THOMAS MARTIN MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | 7:18-cv-002-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

Plaintiff Thomas Martin Mullins brings this action under 42 U.S.C. § 405(g) to challenge Defendant Commissioner's final decision denying Plaintiff's application for Social Security Disability Insurance Benefits and Supplemental Security Income. [DE 1]. The specific matters currently before the Court include Plaintiff's Motion for Summary Judgment [DE 17] and Defendant's Motion for Summary Judgment [DE 19]. Both matters are now ripe for decision, and for the reasons discussed below, Plaintiff's Motion for Summary Judgment [DE 17] will be denied, and Defendant's Motion for Summary Judgment [DE 19] will be granted. Accordingly, the Court will affirm the Commissioner's decision, as it is supported by substantial evidence.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 2013, Plaintiff filed both a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging his disability began on February 14, 2012. [Tr. 143-46]. At the time of Plaintiff's alleged disability onset date, he was 47 years old. [Tr. 357-64]. Plaintiff is a high school graduate, and his past relevant work was as a coal mine shuttle car operator and a coal mine scoop operator. [Tr. 357-64]. In Plaintiff's application materials, he initially alleged he was unable to work due to both physical and mental impairments, including anxiety, depression, high blood pressure, arthritis, and pain in the lower back, neck, left knee, arms, and shoulders, which arose from injuries to his neck and back that occurred while he was working in the mines. [Tr. 395]; *see also* [Tr. 429, 475, 694].

Plaintiff received treatment from pain management specialists James Chaney, M.D., Peter Wright, M.D., Ballard Wright, M.D., and the Wrights' nurse practitioner, Rebecca Moore. [Tr. 475-77, 478-500, 583-89, 641-57, 669-8]. On January 28, 2013, Plaintiff began seeing John W. Gilbert, M.D., for his back pain. [Tr. 508-13]. Initially, Dr. Gilbert recommended physical therapy and facet blocks. [Tr. 508]. However, Dr. Gilbert's initial treatments proved insufficient, so on October 10, 2013, he performed a cervical decompression fusion surgery on Plaintiff. [Tr. 543-46].

Plaintiff's treatment with Dr. Gilbert, Dr. Peter Wright, and Dr. Ballard Wright will be discussed further herein.[1]

Plaintiff's claims were denied initially and on reconsideration. [Tr. 143, 144, 197, 198]. After a March 31, 2015 hearing [Tr. 117-42], on April 13, 2015, an Administrative Law Judge ("ALJ") reviewed the evidence of record and granted Plaintiff's applications. [Tr. 199-209]. However, on February 2, 2016, the Appeals Council vacated the ALJ's April 13, 2015, Decision [Tr. 199-209] and remanded this case for further proceedings because the Appeals Council found the ALJ's April 13, 2015, Decision [Tr. 199-209] was not supported by substantial evidence. [Tr. 210-16]. Pursuant to the Appeals Council's remand, on April 6, 2016, a second hearing [Tr. 79-116] was held, and on June 28, 2016, an ALJ reviewed the evidence of record and denied Plaintiff's applications. [Tr. 24-45]. In denying Plaintiff's applications, the ALJ found the Plaintiff had severe breathing and neck and lower back pain and should avoid concentrated exposure to vibration and fumes, odors, dusts, gases, and poor ventilation. [Tr. 29, 31]. The ALJ determined Plaintiff could perform light work, including the following restrictions: frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds;

---

[1]Since Plaintiff's arguments are limited to the ALJ's consideration of Dr. Gilbert and Dr. Peter Wright's opinions, the Court will focus primarily on their treatment of Plaintiff, as opposed to Plaintiff's treatment from other sources.

occasional stooping, kneeling, crouching, and crawling; and frequent overhead reaching. [Tr. 31]. The ALJ's light work finding was consistent with state agency physician Donna Sandler, M.D.'s January 7, 2014, assessment that Plaintiff was not disabled and was capable of performing light work with certain postural, reaching, and environmental limitations. [Tr. 191-96]. The ALJ accorded great weight to the state agency. [Tr. 37]. In conclusion, the ALJ decided that while Plaintiff was unable to perform his past relevant work as a coal mine bolting machine operator and a coal mine scoop operator, he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Tr. 24-45]. On October 31, 2017, the ALJ's June 28, 2016, Decision [Tr. 24-45] became the final determination of the Commissioner when the Appeals Council denied Plaintiff's request for review. [Tr. 1-6].

Having exhausted his administrative remedies, on January 4, 2018, Plaintiff sought review through an action in this Court, arguing in Paragraph V of his Complaint [DE 1] that Defendant's determination that Plaintiff was not disabled was not supported by substantial evidence. [DE 1, at 2]. On April 19, 2018, Defendant filed an answer contending, "Paragraph V of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required. To the extent that the court deems a responsive pleading is necessary, defendant denies paragraph V." [DE 9, at 1]. Pursuant

to the Court's April 19, 2018, Standing Scheduling Order [DE 10], Plaintiff was directed to "move for summary judgment or judgment on the pleadings within sixty (60) days." [DE 10, at 2].

On June 20, 2018, instead of moving for summary judgment or judgment on the pleadings, Plaintiff filed a Motion for Extension of Time in Order to Submit Memorandum [DE 11] asserting, "[C]ounsel has had to relocate this law practice which interrupted his ability to properly prepare Mr. Mullins' [sic] memorandum and have delayed our ability to complete our arguments on Mr. Mullins' [sic] behalf." [DE 11, at 1]. On August 13, 2018, Plaintiff filed a Motion to Amend Complaint and Motion to Remand [DE 12], requesting the Court allow Plaintiff "to amend its complaint to reflect that the denial issued claim issued in 2017 was issued by an ALJ who was not properly appointed." [DE 12, at 1]. On March 25, 2019, the Court granted Plaintiff's Motion for Extension of Time in Order to Submit Memorandum [DE 11] and denied Plaintiff's Motion to Amend Complaint and Motion to Remand [DE 12] because he failed to state his argument in a non-perfunctory manner and, accordingly, waived his argument. [DE 16]. Specifically, the Court found Plaintiff waived his argument because instead of making a proper argument, Plaintiff directed this Court to merely look at a United States Supreme Court opinion, *Lucia v. S.E.C.,* 138 S.Ct. 2044 (2018). *Id.*

As will be discussed further herein, on April 10, 2019, Plaintiff filed the present Motion for Summary Judgment [DE 17],

with an accompanying Memorandum in Support [DE 17-2]. Responding to Plaintiff's Motion for Summary Judgment [DE 17], on May 6, 2019, Defendant filed a Motion for Summary Judgment [DE 19] arguing, in summary, that Plaintiff has waived all *Lucia* related challenges, and in assessing Plaintiff's RFC, the ALJ reasonably weighed the medical opinion evidence. [DE 19, at 7-12].

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should

affirm the ALJ's Decision [Tr. 24-45] "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

"In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the evidence in the record 'taken as a whole . . . .'" *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health & Human Services*, 658 F.2d

437, 439 (6th Cir. 1981).

## III. DISCUSSION

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary, the five-step sequential evaluation process is as follows:

> The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the [fourth step] is to determine whether the claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. [At the fifth step,] [i]f the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, *id.,* and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. § 416.920(f); *see also* Subpart P, Appendix 2, Tables 1-3.

*Williamson v. Secretary of Health and Human Services,* 796 F.2d

146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The claimant "bear[s] the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

Since the Parties' cross Motions for Summary Judgment [DE 17; R. 19] concern the same facts, the Court will consider the Parties' Motions [DE 17; R. 19] together. The issues presently before the Court are whether Plaintiff has waived all *Lucia* related challenges and whether the ALJ's Decision [Tr. 24-45] was supported by substantial evidence. [DE 17-2; DE 19]. The only step at issue is step five.

### A. WHETHER PLAINTIFF HAS WAIVED *LUCIA*-RELATED CHALLENGES

As previously mentioned, the Court denied Plaintiff's Motion to Amend Complaint and Motion to Remand [DE 12] because Plaintiff waived his *Lucia*-based argument that the ALJ who denied Plaintiff's claim was not properly appointed. [DE 16]. Despite the Court denying this argument as waived, Plaintiff attempts to reassert it by again claiming, "[T]he denial decision here was rendered by an

ALJ who was not properly appointed under the Appointment Clause when she made this denial decision in Plaintiff's case." [DE 17-2, at 7]. Once again, Plaintiff fails to make an argument in a non-perfunctory manner. Instead, Plaintiff insists SSR 17-1p "directly applies herein" and "clearly undercuts" the Court's previous ruling on Plaintiff's *Lucia*-based argument, but Plaintiff chooses not to explain how SSR 17-1p either "directly applies herein" or why it "clearly undercuts" the Court's previous ruling regarding *Lucia* and whether the ALJ was properly appointed. *Id.* at 1, 7 (citing SSR 17-1p, 2017 WL 898573 (Mar. 1, 2017)). Accordingly, the Court will find Plaintiff's arguments related to *Lucia* and SSR 17-1p are waived and reminds Plaintiff, "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

## B. WHETHER THE ALJ'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

In reaching her June 28, 2016, Decision [Tr. 24-45], the ALJ "accord[ed] little weight to the opinions of Dr. Gilbert in his

medical Source Statement because his treatment notes are not consistent or supported with the doctor's [March 30, 2015] medical source statement." [Tr. 37 (citing [Tr. 658-61])]. In addition to Dr. Gilbert's conclusion that found Plaintiff's conditions rendered him "disabled from any occupation," [Tr. 661], Dr. Gilbert's opined in his Source Statement [Tr. 658-61] that Plaintiff could do the following: work no more than one (1) hour a day; stand no more than two (2) hours during an eight-hour work day; sit no more than two (2) hours during an eight-hour work day; lift no more than ten (10) pounds; lift no more than five (5) pounds on a frequent basis; bend occasionally; manipulate his right and left hand occasionally; need to elevate his legs frequently during an eight-hour work day; squat occasionally; never crawl; never climb; occasionally reach above shoulder level; and require a sit/stand option. [Tr. 658-60]. Also, Dr. Gilbert found Plaintiff was totally restricted from the following: unprotected heights; moving machinery; marked changes in temperature and humidity; driving an automobile and/or equipment; and exposure to dust, fumes, and gases. [Tr. 658-60].

Plaintiff is correct that Dr. Gilbert treated Plaintiff shortly after his February 14, 2012, injuries and continued to do so for quite some time thereafter, and the ALJ's April 13, 2015, Decision [Tr. 199-209] gave great weight to Dr. Gilbert's March 30, 2015, Source Statement [Tr. 658-61]. [DE 17-2, at 7]. However,

the February 2, 2016, Appeals Council remanded the ALJ's April 13, 2015, Decision [Tr. 199-209], finding, "Dr. Gilbert's earliest treatment notes are not consistent with the doctor's medical source treatment," and "Dr. Gilbert's opinion is not substantiated throughout the period at issue and does not warrant the great weight afforded to it in the decision." [Tr. 213]. Specifically, the Appeals Council found that Dr. Gilbert's finding that Plaintiff's impairments would cause him to miss "'most days' of work per month" was not supported by Dr. Gilberts previous notes indicating the following: Plaintiff's neck and back pain gradually developed and medication had been effective in treating the pain; Plaintiff "had normal lumbar range of motion, normal strength and reflexes, and intact sensation;" Plaintiff "had a normal gait, was able to stand without difficulty, and straight leg raise testing was negative bilaterally;" and Plaintiff denied having "fatigue, sleep problems, difficulty concentrating, or other symptoms that might account for the missed-work limitation." [Tr. 213 (citing [Tr. 547; 549-51, 553-54])]. The Appeals Council further found that Plaintiff's missed-work limitation was not supported by the evidence because Dr. Ballard Wright, another one of Plaintiff's treating physicians, noted that Plaintiff's "pain medications were keeping him under reasonable control and allowing him to stay active; the [Plaintiff] desired no change, he was overall reasonably happy with how he was doing, and he denied significant

medication side effects . . . ." [Tr. 213 (citing [Tr. 645-46))].

Plaintiff posits that the ALJ's choice to reverse her earlier decision to give Dr. Gilbert's opinions in his Source Statement [Tr. 658-61] great weight and instead give Dr. Gilbert's opinions little weight "is arbitrary and unsupported by the medical evidence in the record." [DE 17-2, at 7]. Plaintiff further asserts that Dr. Gilbert and Dr. Wright's opinions "expressly detail and qualify a narrative summation of all the medical treatment, testing, medial review and informed medical assessments of Mr. Mullins to be evidentially compelling. Given Dr. Gilbert's unique perspective, giving controlling weight to the primary treating physician is most apropos." *Id.* at 7-8. In sum, Plaintiff argues the following:

> Because the ALJ failed to properly weigh the medical opinions of all of Plaintiff's treating physicians in accord with 20 C.F.R. § 404.1527, and failed to provide "good reasons" for refusing to give Dr. Gilbert and Wright[2], Mr. Mullins' treating surgical and pain physician, true controlling weight and that failure suggests that the ALJ failed to properly apply the treating physician rule set forth in 20 C.F.R. § 404.1527 and delineated in *Wilson v. Commissioner of Social Security*, 378 F. 2d 541, 544 (6th Cir. 2004). This ALJ's intentional circumvention of agency rules and regulations denotes a lack of substantial evidence and

---

[2] There are two Dr. Wrights in this case, Dr. Ballard Wright and Dr. Peter Wright, and both doctors work in the same office. Plaintiff fails to specify which Dr. Wright the ALJ refused to give controlling weight. However, since Plaintiff's earlier assertion that "[Plaintiff's] chronic severe pain is supported by the uncontested medical records from Dr. Ballard Wright's Pain Clinic in Lexington, KY" cites only to treatment notes from Dr. Peter Wright, the Court will construe that Plaintiff's argument is referring to Dr. Peter Wright. [DE 17-2 (citing [Tr. 46-56, 475-77, 640-57, 669-689])].

would warrant reversal and remand with appropriate
        instructions. *Cole v. Astrue*, 661 F. 3d 931,937 (6th
        Cir. 2011).

[DE 17-2, at 8].

        Federal regulations provide that the Social Security
Administration makes disability determinations based on "all the
evidence in [the] case record." 20 C.F.R. § 404.1520(a)(3).
Furthermore, the Social Security Administration is to "always
consider the medical opinions in [the] case record together with
the rest of the relevant evidence [they] receive." 20 C.F.R. §
404.1527(b). "In evaluating the intensity and persistence of [a
claimant's] symptoms, [the Administration] consider[s] all of the
available evidence from [a claimant's] medical sources and
nonmedical sources about how [a claimant's] symptoms affect
[them]." 20 C.F.R. § 404.1529(c)(1).

        Regarding how much weight the Administration gives medical
opinions, treating sources' medical opinions are given controlling
weight "on the issue(s) of the nature and severity of your
impairment(s)" unless the treating sources' medical opinions are
not "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and [are] not [consistent] with
the other substantial evidence in your case record." 20 C.F.R. §

404.1527(c)(2).[3] When a treating source's opinion is not given controlling weight, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). Even when the treating source's opinion is not entitled to controlling weight, there remains a rebuttable presumption "that the opinion of a treating physician is entitled to great deference." *Id.* (citing SSR 96-2p, 1996 WL 37188, at *4 (July 2, 1996) ("'In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.'")). "[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 37188, at *5); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of

---

[3] Medical opinions for claims filed on or after March 27, 2017 will be evaluated differently. 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017).

determination or decision for the weight we give your treating source's medical opinion.").

Here, as previously mentioned, the reason the ALJ accorded little weight to Dr. Gilbert's opinions in his Source Statement [Tr. 658-61], which found Plaintiff to be disabled from holding any occupation due to severe limitations that would cause him to miss work most days, is "because his treatment notes are not consistent or supported with the doctor's [March 30, 2015] medical source statement." [Tr. 37 (citing [Tr. 658-61])]. Both the Appeals Council and ALJ found, Dr. Gilbert's treatment notes do not support his later opinions that Plaintiff was unable to hold any occupation and had severe limitations. Throughout Dr. Gilbert's January 28, 2013 to October 28, 2013, treatment of Plaintiff, Dr. Gilbert consistently found the following: Plaintiff gradually developed a work injury that caused pain in both his neck and arm; Plaintiff stated physical therapy did not relieve the pain, but pain medication was effective in treating the pain; Plaintiff had normal cervical range of motion in his neck, mildly reduced cervical spine range of motion, normal thoracic spine range of motion, normal lumbar range of motion, restricted range of motion in his right upper extremity, normal range of motion in his left upper extremity, and normal range of motion in both his left and right lower extremity; Plaintiff had normal reflexes, normal joint stability, intact sensation, and normal muscle strength, tone, and

bulk; Plaintiff had a normal gait, was able to stand without difficulty, and straight leg raise testing was negative bilaterally; and Plaintiff denied having fatigue, sleep problems, incoordination, difficulty concentrating, memory or speech difficulties, loss of balance, back pain or spasms, leg pain, joint pain, anxiety, depression, confusion, or other symptoms that might account for Dr. Gilbert's missed-work limitation determination. [Tr. 508-12, 516-19, 558-61, 563-66]. Dr. Gilbert's treatment of Plaintiff did not end on October 28, 2013. On May 5, 2014, Dr. Gilbert saw Plaintiff and found Plaintiff had a mildly reduced range of motion of his cervical spine, paraspinal muscle weakness, restricted range of motion of his right upper extremity, limb weakness, normal reflexes, and normal gait. [Tr. 636-39].

While Plaintiff's conditions appeared to have worsened between his October 28, 2013, visit and his May 5, 2014, visit with Dr. Gilbert, Dr. Gilbert's treatment notes still do not support his later opinions that Plaintiff would miss work "most days," was "occupationally disabled from any occupation," and exhibited "[f]unctional limitations less than sedentary." [Tr. 658-61]. Moreover, Dr. Gilbert presents no other evidence to support such opinions and provides no explanation for why his opinions in his Source Statement [Tr. 658-661] diverged so drastically from his treatment notes. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant

evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Secretary of Health & Human Servs.,* 964 F.2d 524, 528 (6th Cir. 1992) ("the ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'")); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (citing *Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) ("[Treating physicians'] opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence.")).

Not only does Dr. Gilbert fail to support his opinions, none of Plaintiff's other doctors found him to have the severe limitations Dr. Gilbert suggested. Between May 21, 2013 and February 24, 2015, Dr. Peter Wright and Dr. Ballard Wright treated Plaintiff. [Tr. 640-57]. On August 19, 2014, Dr. Peter Wright—not Dr. Ballard Wright, as the Appeals Council mistakenly stated—found Plaintiff's pain medications were keeping Plaintiff's pain "under reasonable control" and allowing Plaintiff to stay active, Plaintiff "desire[d] no change," Plaintiff was "[o]verall reasonably happy with how he [was] doing," Plaintiff had normal

gait, strength, reflexes, and sensation to light touch, and Plaintiff was "[d]oing relatively well on current regimen." [Tr. 640-46]. However, when the Appeals Council reversed the ALJ's earlier Decision [Tr. 199-209] finding Plaintiff to be disabled, the Appeals Council only considered the August 19, 2014, visit Plaintiff had with Dr. Peter Wright and ignored both Dr. Peter Wright and Dr. Ballard Wright's subsequent visits with Plaintiff, which the Court will discuss further.

On January 27, 2015, Plaintiff visited Dr. Ballard Wright and exhibited increased pain, antalgic gait, and restricted range of motion of both the cervical and lumbar spine, but he maintained normal sensation and muscle strength and tone. [Tr. 648-51]. While Plaintiff's pain increased, it was due to Plaintiff not having any prescriptions for pain medication between October 2014 and his January 27, 2015, visit. [Tr. 648]. On February 24, 2015, when Plaintiff visited Dr. Peter Wright again, Plaintiff's "pain [was] better controlled with resuming his previous medication." [Tr. 653]. During Plaintiff's February 24, 2015, visit with Dr. Peter Wright, Dr. Peter Wright found Plaintiff "capable of performing activities of daily living," had normal quality of sleep, had antalgic gait, had a restricted range of motion of the lumbar spine with flexion and extension, and had normal sensation and muscle strength and tone. [Tr. 653-656]. Plaintiff also reported that he

had been repairing his water lines, albeit with some difficulty. [Tr. 653].

On March 31, 2015, one day after Dr. Gilbert completed his Source Statement [Tr. 658-661], Dr. Peter Wright found Plaintiff's gait to be normal. [Tr. 687]. Aside from the improvement in Plaintiff's gait, his condition remained the same as his previous visit. [Tr. 686-89]. On May 26, 2015, Dr. Peter Wright saw Plaintiff and found he was "essentially unchanged" since his last visit, his medication "[was] [w]orking well for him with no side effects," he had a normal gait, and both his cervical and lumbar spine range of motion were restricted with flexion and extension. [Tr. 682-85]. On July 21, 2015, Plaintiff visited Dr. Peter Wright again, and Dr. Peter Wright found Plaintiff was "essentially unchanged" since his most recent visit, including Plaintiff having a normal gait, and "[was] able to be fairly active, and is pleased wit[h] how he [was] doing." [Tr. 678-79]. During Plaintiff's September 22, 2015, visit, Dr. Peter Wright Plaintiff had antalgic gait, but despite him stating, "Bad day. I have to use cane," Dr. Peter Wright curiously noted, "The patient has antalgic gait doesn't use assistive devices." [Tr. 675-76]. Also, during the September 22, 2015, visit, Dr. Peter Wright found that while Plaintiff's cervical spine range of motion remained restricted with flexion and extension, Plaintiff's lumbar spine had no limitation in range of motion. [Tr. 676]. On November 24, 2015,

Plaintiff visited Dr. Peter Wright, and Plaintiff's pain was "essentially unchanged," he stated his intent to see Dr. Gilbert to inquire about a possible back surgery, and had a normal gait and restricted range of motion with flexion and extension of his lumbar spine. [Tr. 669-73].

In January 2016, Plaintiff underwent a lumbar spine fusion/decompression surgery. [Tr. 664-68, 698-708]. On January 27, 2016, in a post-operation visit, Dr. Gilbert noted Plaintiff was "doing remarkably well . . . his symptoms and signs are decreased." [Tr. 693]. On March 11, 2016, Juanita Hughes, D.O. also reported Plaintiff was "doing pretty well" after his surgery. [Tr. 698]. On May 3, 2016, Plaintiff visited Dr. Peter Wright for the last time that is available in the record, and Dr. Peter Wright noted that Plaintiff was "[d]oing pretty well from surgery, but still with significant pain. Med[ications] allow him to be more active, but feels pain has been worse lately in part due to weather." [Tr. 47]. During the May 3, 2016, visit, Plaintiff had antalgic gait and normal muscle strength and tone. *Id.*

Not only are Dr. Gilbert's opinions in his Source Statement [Tr. 658-61] far more dire than his previous treatment notes and the reports of other doctors in the record, it is inconsistent with Plaintiff's own statements in the record. *Wright v. Sullivan*, No. 91-5992, 1992 WL 75218, at *5 (6th Cir. Apr. 15, 1992) (finding the Secretary's decision to give deference to one doctor's opinion

over another was justified where the latter doctor's opinion "was supported by no clinical findings and contradicted by claimant's own statements"). In addition to Plaintiff's statements that have previously been mentioned herein, Dr. Gilbert's opinion that Plaintiff could lift no more than ten (10) pounds, [Tr. 659], is contradicted by Plaintiff's later testimony that prior to his January 2016 surgery that he could lift fifteen (15) or (20) pounds, [Tr. 96]. Moreover, Dr. Gilbert's opinion that Plaintiff could only occasionally use his right and left hands for manipulation, [Tr. 659], is contradicted by Plaintiff's December 27, 2013, function report, wherein Plaintiff denied having difficulty using his hands, [Tr. 440].

After reviewing the whole record, the Court finds there is substantial evidence to support the ALJ's decision to accord Dr. Gilbert's opinions in his Source Statement [Tr. 658-61] little weight due to Dr. Gilbert's opinions being inconsistent with his earlier treatment notes and unsupported by evidence. Furthermore, the ALJ's summation of the evidence, treatment notes, and medical opinions, along with her explanation that Dr. Gilbert's opinions were inconsistent and unsupported, were sufficiently specific to explain the weight given to Dr. Gilbert's opinions and the reasons for giving that weight. *See Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 37188, at *5). While the treatment notes from Dr. Peter Wright and Dr. Ballard Wright show Plaintiff's medical

conditions changed over time—sometimes for the better, sometimes for the worse—Dr. Gilbert's treatment notes, even those from May 5, 2014, do not support him finding Plaintiff to have such severe limitations as described in Dr. Gilbert's March 30, 2015, Source Statement [Tr. 658-661]. Even if the Court may have given Dr. Gilbert's opinions different weight than the ALJ, the ALJ's Decision [Tr. 24-45] must be affirmed because it was supported by substantial evidence, and she provided good reasons for discounting Dr. Gilbert's opinions. *Longworth*, 402 F.3d at 595 (citations omitted); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.").

Regarding the ALJ's alleged refusal to give Dr. Peter Wright's opinions controlling weight, there is no indication in the ALJ's Decision [Tr. 24-45] that the ALJ did not give Dr. Peter Wright's opinions controlling weight. The ALJ certainly considered Dr. Peter Wright's treatment notes throughout her Decision [Tr. 24-45]. However, Plaintiff fails to cite to any medical opinion, as defined in 20 C.F.R. § 404.1527(a)(1), that was drafted by Dr. Peter Wright. 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do

despite impairment(s), and your physical or mental restrictions."). While there are many treatment notes from Dr. Peter Wright in the record, there is no source statement or other document from Dr. Peter Wright describing Plaintiff's prognosis, what Plaintiff can do despite his impairments, and what restrictions Plaintiff may have. Since there is no medical opinion from Dr. Peter Wright present in the record, as there is from Dr. Gilbert, the ALJ was not required to provide good reasons for refusing to give Dr. Peter Wright's opinion controlling weight.

## IV. CONCLUSION

For the foregoing reasons, the Court, having considered the matter fully, and being otherwise sufficiently advised,l

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 17] is **DENIED;**

(2) Defendant's Motion for Summary Judgement [R. 19] is **GRANTED;**

(3) Defendant Commissioner's decision denying Plaintiff's disability claim is **AFFIRMED;**

(4) This matter is **DISMISSED** and **STRICKEN FROM THE COURT'S ACTIVE DOCKET;** and

(5) Judgment in favor of the Defendant will be **ENTERED** separately.

This the 18th day of September, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge